## Aaron B. Mead v. Rolla M. Davies.

1. CORPORATIONS — *Remedies of Simple Contract Creditors.*—A simple contract creditor can not have the aid of a court of equity to collect his claim against a foreign corporation until he has first exhausted his remedy at law.

2. SAME—*Enforcement of Remedies Given Creditors.*—When a special remedy is given creditors of a corporation against its stockholders, the liability can not be enforced in a foreign State.

Appeal, from an interlocutory order appointing a receiver. entered by the Circuit Court of Cook County; the Hon. EDWARD F. DUNNE, Judge, presiding. Heard in this court at the March term, 1899. Reversed. Opinion filed July 20, 1899.

### STATEMENT.

This is an appeal from an interlocutory order appointing a receiver for the Union Trust & Security Company.

The bill of complaint filed by appellee against the Union Trust & Security Company and the American Contract Company, both West Virginia corporations, and appellant and others, as directors and stockholders of the former company, certain other parties as directors and officers of the latter company, and the Royal Trust Company of Chicago, presents the following facts :

The Union Trust & Security Company issued to appellee its contract by which it agreed, in consideration of ten annual payments of $73.58 each, to pay to Hester A. Davies, her legal representatives or assigns, $1,000; the contract might be terminated by sixty days' notice, and after two annual payments the cash surrender value would be $100. Appellee made two annual payments on April 8, 1896, and April 7, 1897, respectively, to the Union Trust & Security Company, though the latter of said payments is in another place in the bill averred to have been made to the American Contract Company. On February 7, 1898, appellee served notice of his election to terminate said contract, and therefore said Union Trust & Security Company is indebted to appellee in the sum of $100.

On July 14, 1896, all of the officers of the Union Trust & Security Company resigned, the vacancies thereby created have not been filled, and on the same date the company gave up its offices and appointed the American Contract Company its trustee to wind up its business. April 1, 1898, the American Contract Company ceased doing business and ceased to act as trustee for the Union Trust & Security Company.

The Union Trust & Security Company is indebted in the sum of $15,000, and its assets do not exceed $7,000, a portion of which sum consists of notes, etc., in the possession of the Royal Trust Company, an Illinois corporation, placed there as security for this and similar contracts.

A large amount is alleged to be due from appellant and others for unpaid stock subscriptions, and it is also claimed that they received 499 shares of the stock of the American Contract Company in consideration of the transfer to that company of the interests of the Union Trust & Security Company. It is also alleged that the American Contract Company and its directors received a large amount of the property of the Union Trust & Security Company. On April 29, 1898, Charles H. Bradley was appointed by the Circuit Court of Cook County receiver of said American Contract Company.

The bill prays for discovery in regard to the matters above mentioned, and also for a discovery of the names of the other stockholders and creditors of the Union Trust & Security Company, and that appellant and the other stockholders of the Union Trust & Security Company be required to pay to the receiver herein the unpaid portion of the stock subscriptions and the value of the said 499 shares of the American Contract Company's stock, and that a receiver may be appointed for the assets of the Union Trust & Security Company.

To this bill appellant, and certain other defendants, filed a demurrer.

Upon the showing made by the bill, and on notice to the Royal Trust Company, the court appointed Charles H.

Bradley receiver, directing him to collect the assets of said company, and to hold them until the further order of the court. From the order so entered, Aaron B. Mead, who was made a party defendant as a stockholder and director of the Union Trust & Security Company, and from whom it is sought by the bill to collect the unpaid portion of his subscription, prosecutes this appeal.

GEO. S. STEERE, attorney for appellant; H. W. WAKELEE, of counsel.

A bill of this character can not be maintained against a corporation of another State. Patterson v. Lynde, 112 Ill. 196; Young v. Farwell, 139 Ill. 326; Tuttle v. National Bank of the Republic, 161 Ill. 497.

Complainant, not being a judgment creditor, has no standing in a court of equity. Ladd v. Judson, 174 Ill. 344. See also Dewey v. Eckert, 62 Ill. 218; Scripps v. King, 103 Ill. 460; Dormueil v. Ward, 108 Ill. 216; Gore v. Kramer, 117 Ill. 176; Detroit, etc., Rolling Mills v. Ledwidge, 162 Ill. 305; Austin v. Bruner, 169 Ill. 178.

FRANK LYNCH, attorney for appellee, contended that a receiver of a foreign corporation may be appointed in a State to preserve the property and effects of a foreign corporation for the benefit of creditors and shareholders. 8 Am. & Eng. Ency. of Law, 408. See also High on Receivers (Ed. 3), Sec. 306.

A court of equity will assume jurisdiction for the purpose of administering a trust fund. Story's Eq. Juris. (Ed. 12), Sec. 975a; Atlas National Bank v. More, 152 Ill. 541; Beach et al. v. Miller, 130 Ill. 170.

MR. PRESIDING JUSTICE SEARS delivered the opinion of the court.

But one of the questions presented upon this appeal need be considered, viz.: the right of the complainant, as a simple contract creditor, to maintain the suit.

The bill of complaint proceeds under section 25 of the

incorporation act.    It alleges in effect that the Union Trust & Security Company, a West Virginia corporation, has ceased doing business, leaving debts unpaid, and that complainant is a creditor for the amount of one hundred dollars, due upon contract.    It prays for discovery of assets of the Union Trust & Security Company, and for discovery of its stock subscribers and the amounts due to the corporation upon such stock subscriptions, and prays that the liability of appellant and other stock subscribers may be enforced, and the amount due from them in this behalf be paid to a receiver to be appointed, etc.

There are no allegations in the bill which would sustain it upon any other theory than under the provisions of section 25 of the incorporation act.    We have, then, only to inquire if it can be maintained under that act.

The complainant is a simple contract creditor.    The corporation in question is a foreign corporation, organized under the laws of the State of West Virginia.    Two remedies are in effect provided by section 25.    One is to enforce against stockholders their liability for unpaid stock.    The other is to wind up and dissolve the corporation.    Chicago Steel Works v. Ill. Steel Co., 153 Ill. 9.

The provision for the appointment of a receiver and the reaching and distributing of assets is ancillary to the main purpose of the act, which is to enable the creditor to reach the amounts due from stock subscribers to the corporation. In the decision of the case above cited, the Supreme Court said :

"The chief object of the suits in equity, authorized by section 25 of the corporation act, is to reach the liability of the stockholders after the exhaustion of the assets of the corporation.    The collection and disposition of those assets through the medium of a receivership must necessarily precede the final determination of the liability of the stockholders.    The suits are authorized to be brought against the stockholders ' by joining the corporation in such suit.'    The joining of the corporation is preliminary and subsidiary to reaching the liability of the stockholders."

Unless a suit proceed for the remedy which it is the pur-

pose of the act to provide, it can not be maintained as a suit brought under this act. Cohn v. Waters, 83 Ill. App. 387.

If it should be held that a creditor who had not exhausted his remedies at law could proceed under this section for the purpose only of reaching general assets and distributing them through a receiver in payment of such claims, it would amount to holding that the requirement that a creditor first exhaust his remedies at law before proceeding in equity had no application to the case of a corporation which had ceased doing business, leaving debts unpaid. The statute has not as yet received any such construction by our Supreme Court, and we are not willing to so construe it. In view of the language above cited, we are unable to see how the purpose of the act can be so interpreted.

In the case under consideration no relief could be had under the allegations of the bill of complaint in respect to either of the two remedies afforded by the act, i. e., the court could not wind up the affairs of this foreign corporation for the purpose of decreeing its dissolution; neither could it enforce whatever liability there may be of the subscribers to the capital stock under the laws of the State of West Virginia. Patterson v. Lynde, 112 Ill. 196; Young v. Farwell, 139 Ill. 326; Fowler v. Lamson, 146 Ill. 472; Tuttle v. Nat. Bank, 161 Ill. 497.

In Fowler v. Lamson, *supra*, a judgment creditor, who had obtained judgment against a Kansas corporation in Illinois, sought to reach the individual liability of stockholders of that corporation, and to enforce the liability which was imposed upon them by the laws of Kansas. In that case the Supreme Court said:

"There is also the further insuperable objection to this proceeding, that it is an attempt to enforce the individual liability of the defendants in a jurisdiction other than that in which the corporation exists, the rule being that when a special remedy is given creditors of a corporation against its stockholders, the liability can not be enforced in another State." Citing Christensen v. Eno, 106 N. Y. 97, and Nimick v. Mingo Iron Works Co., 25 W. Va. 184.

Tuttle v. Nat. Bank, *supra*, was an action at law to re-

cover against a stockholder of a Kansas corporation and upon the ground of the liability created by the laws of Kansas. The Supreme Court said in that case:

" The important question to be here determined is whether the courts of this State will, in any form, take jurisdiction of a question arising as to the respective relations of creditors and stockholders of a corporation of another State, where a special remedy is provided by statute, before there is a determination by the courts of such State of the just proportion of corporate indebtedness to be borne by solvent stockholders of such corporation. No decree of the courts of this State could result in taking an account and dissolving a corporation of another State. It is for the courts of that State to enter a decree stating the account, winding up the affairs of the corporation, and determining the relations of the stockholders, creditors and corporation to each other."

It would seem clear that the provisions of section 25 in question can not be made to apply to a corporation organized under the laws of another State; and in Wincock v. Turpin, 96 Ill. 135, it was held that this section did not apply even to an Illinois corporation which was organized under a special charter and not under the general corporation law.

We are unable to assent to the contention that because this foreign corporation transacted business in Illinois, therefore section 26 of the incorporation act operated to make its stock subscribers' liability the same as is imposed by our incorporation act upon subscribers to capital stock of corporations organized under that act.

This bill of complaint, therefore, invokes not the power conferred by section 25 of the incorporation act, but rather the general chancery powers of the court. The complainant, a simple contract creditor, can not have the aid of a court of equity to collect his claim against the corporation until he has first exhausted his remedy at law. Nor does the difficulty of his situation in relation to suing the corporation here change the rule. Ladd v. Judson, 174 Ill. 344.

We see no force in' the contention that Mead, the appellant, had no right to maintain an appeal from the order.

He is a party to the suit,· and no valid reason is disclosed why his right to object to the order and seek its reversal should be questioned.

The order is reversed.